## FSLIC

v.

## John A. MMAHAT, et al.

### Civ. A. No. 86–5160.

United States District Court,
E.D. Louisiana.

Aug. 11, 1988.

James C. Gulotta, Jr., Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for plaintiff.

William E. Steffes, Steffes & Macmurdo, Baton Rouge, La., for Executive Office Centers, Inc.

## OPINION

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on appeal from the Bankruptcy Court's Order of April 15, 1988, denying the Motion to Disallow and Objection to Allowance of Claim filed by Executive Office Centers, Inc. ("EOC"), the debtor-appellant.[1]

On January 27, 1987, EOC filed a voluntary petition for Chapter 11 reorganization

---

**1.** Another order granted the Motion to Modify Stay and for Adequate Protection filed by Bur-

rus Investment Group, Inc. ("Burrus"), the Appellee. This order was originally challenged on

in the Bankruptcy Court, listing the Louisiana State Employees Retirement System ("LASER"), as a secured creditor on Schedule A–2 filed with its petition. On May 13, 1987, Burrus Investment Group, Inc., the appellee herein, purchased from LASER a promissory note dated October 1, 1974, in the original principal sum of $1,800,000, payable to the order of the Bank of New Orleans & Trust Company. The purchase price was $816,261.66, exactly one-half of the principal balance then due by EOC under the note. The promissory note is secured by a mortgage executed by EOC dated October 1, 1974, which mortgage was acquired by Burrus on May 12, 1987. This mortgage, ranking first, affects "Independence Mall I," a commercial business building owned and operated by EOC[2], with a stipulated market value of $2,400,000.

On June 4, 1987, less than one month after purchasing the promissory note and mortgage, Burrus filed the motion seeking to modify the automatic stay. EOC filed a Motion to Disallow and Objection to Allowance of Claim on June 10, 1987. A hearing on both the Motion to Modify the Stay and Objection to Claims was held on August 20, 1987. The case was taken under advisement until April 15, 1988, when the Bankruptcy Court rendered a ruling against EOC.

The Bankruptcy Court's Findings of Fact and Conclusions of Law do not demonstrate whether the Court considered fully an alleged change in circumstances be-

tween the hearing and the issuance of its order, which allegedly created at least $400,000 equity in the property of potential benefit to EOC and its unsecured creditors. EOC asserts this change in circumstances emanated from a settlement between EOC and Westinghouse Credit Corporation ("WCC"), which substantially reduced the amount due to WCC under its second mortgage on the Independence Mall I property. The settlement reduced the total amount secured by the second mortgage on Independence Mall I to $200,000, creating equity in the property far exceeding the total of the Burrus claim and the reduced WCC claim.[3]

As of November 5, 1987, the encumbrances and the amount of debt secured by Independence Mall I appeared as follows:

| | |
|---|---|
| Accepted market value | $2,400,000 |
| Less debts: | |
| LASER | $1,748,897 |
| WCC | 200,000 |
| Total debt | $1,948,897 |
| Equity | $ 451,103 |

Against this background, EOC raised a two-fold objection to the Burrus claim: First, EOC claims the transfer of the claim pending litigation is the transfer of a litigious right under Louisiana state law, La. C.C. Art. 2652, et seq.; second, EOC urges Burrus' claim should be reduced because of its unfairness, unconscionability and the potential for abuse, citing 11 U.S.C. § 105(a). The Court will address each issue in turn.

appeal, but this aspect of the appeal was resolved by joint motion.

**2.** Independence Mall I is one of five major pieces of property which the debtor owned and

possessed prior to bankruptcy. As of the time of filing of the bankruptcy, these properties, the encumbrances, and the amount of debt secured appeared as follows:

| BUILDING | SECURED CREDITOR/RANK | | AMOUNT |
|---|---|---|---|
| Independence Mall I | LASER | 1 | $1,748,897 |
| | WCC | 2 | 2,386,436 |
| Independence Mall II | PELICAN | 1 | 3,715,839 |
| | WCC | 2 | Same as above |
| Gallery Office Bldg. | MONEY | 1 | 260,735 |
| | WCC | 2 | Same as above |
| 3330 Lake Villa Bldg. | WCC | 1 | Same as above |
| Medallion Office Center | PELICAN | 1 | 1,434,578 |
| | FIRST COMMERCIAL | 2 | 270,135 |
| | FIRST FINANCIAL | 3 | 2,930,000 |

**3.** Burrus has appealed the Bankruptcy Court's approval of the settlement, but the Bankruptcy Court was affirmed. See Civil Action No. 88– 1654, Section "M."

### 1. Transfer of a Litigious Right

The purchase price of a litigious right gives to the one against whom it is transferred the option to release himself by payment to the transferee of the real price of the transfer together with the interest from its date. La.C.C. Art. 2652. The transfer of a claim is the sale of a litigious right if a legal proceeding has been instituted and the matter has been contested prior to the transfer. La.C.C. Art. 2653. The requirement that the claim be contested means that the litigation must be on the merits before the right can be said to be litigious. *See Hawthorne v. Humble Oil & Refining Co.*, 210 So.2d 110 (La.App. 1st Cir.) *cert. denied*, 252 La. 832, 214 So.2d 160 (La.1968).

However, no authority was cited to this Court in support of the proposition that the purchase of a loan under which a Chapter 11 debtor is the obligor, when that loan is undisputed by EOC, creates a litigious right. By contrast, Burrus has cited ample authority to establish that no litigious right exists in this case, and this Court agrees with Burrus' contention on this issue. In addition, even if a litigious right existed, the prerequisites to redemption have not been met by EOC. Brief of Appellee at pp. 14–18. Rather than directly confronting the issue, the Unsecured Creditors Committee simply ignores the fact that no litigious right exists and asks this Court to permit it to exercise a nonexistent right of redemption on behalf of the unsecured creditors. This request not supported under Louisiana law or federal bankruptcy law and was therefore properly dismissed by the Bankruptcy Court.

### 2. Equitable Reduction of the Burrus' Claim

However, the matter will be remanded to the Bankruptcy Court for further consideration of whether the Bankruptcy Court should have utilized its equitable powers to reduce the Burrus claim. Section 105(a) of the Bankruptcy Code is a substantive provision which recognizes the Bankruptcy Court's broad equitable powers. The only limitation upon these equitable powers is that they be exercised in a manner consistent with Title 11. *Johnson v. First Nat'l Bank of Montevideo, Minn.*, 719 F.2d 270, 273 (5th Cir.1982), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1983).

The Bankruptcy Court, as a court of equity, may look to the substance of a transaction and, if appropriate, devise new remedies where those in law are inadequate. *See In re Global Western Development Corp.*, 759 F.2d 724, 727 (9th Cir. 1985). *See also Pepper v. Litton*, 308 U.S. 295, 304–05, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). Because of his familiarity with these proceedings, the Bankruptcy Judge is in the best position to make the initial determination and/or hold hearings to decide whether or not to grant the creditors the equitable relief requested of limiting Burrus' value paid for the claim.

For the foregoing reasons, the motion of EOC objecting to the Burrus claim should be reconsidered. The Bankruptcy Court's order signed April 15, 1988 is therefore vacated and the matter remanded for further proceedings consistent with this Opinion, which should be *expeditiously concluded*, in light of the August 10 sale of the property in question.